# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* TONI R. BARRON and VICKY J. SCHEEL,<br><br>    Plaintiffs,<br><br>       vs.<br><br>DELOITTE & TOUCHE LLP; DELOITTE & TOUCHE CONSULTING GROUP, LLC; DELOITTE & TOUCHE CONSULTING GROUP HOLDING, LLC; MEDICAID CLAIMS SOLUTIONS OF TEXAS; AND NATIONAL HERITAGE INSURANCE COMPANY,<br><br>    Defendants. | Civil Action<br><br>No. SA-99-CA-1093-FB<br>JURY TRIAL DEMANDED |

## DEFENDANT DELOITTE CONSULTING LLP'S RESPONSE IN OPPOSITION TO RELATORS' MOTION IN LIMINE TO EXCLUDE CERTAIN OPINIONS OF DELOITTE CONSULTING LLP'S EXPERT TIMOTHY RENJILIAN

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ............................................................................................................1

    A.    Renjilian's Opinions ...................................................................................2

    B.    Renjilian Is Qualified To Offer The Opinions Set Forth In His
          Expert Report And Confirmed At His Deposition.....................................4

    C.    Renjilian's Opinions Are Reliable And Admissible Under Rule
          702 And *Daubert* ......................................................................................8

    D.    Renjilian's Opinions Premised On OIG Reports And Other State
          And Federal Guidance Comply With Rule 703.......................................10

    E.    Renjilian's Opinions Do Not Present Impermissible Legal
          Opinions Or Offend Rule 704..................................................................14

    F.    Relators Incorrectly Fault Renjilian For Refusing To Alter His
          Opinions In Response To Relators' Counsels' Hypothetical
          Questions During His Deposition .............................................................15

    G.    Relators Incorrectly Fault Renjilian For Failing To Remedy The
          Deficiencies In Their Own Expert Parrish's Methodology ......................17

    H.    The Probative Value Of Renjilian's Opinions Is Not Substantially
          Outweighed By Any Danger Of Unfair Prejudice Or Confusion ............19

III. CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ariwodo v. United States Customs & Immigration Enforcement*,
  2007 U.S. Dist. LEXIS 11553 (S.D. Tex. Feb. 20, 2007) ..................................................... 4

*Ballou v. Henri Studios, Inc.*,
  656 F.2d 1147 (5th Cir. 1981) ............................................................................................ 19

*Bell v. Gonzales*,
  2005 WL 3555490 (D.D.C. Dec. 23, 2005)......................................................................... 20

*Bragg v. Edwards Aquifer Auth.*,
  2008 U.S. Dist. LEXIS 4623 (W.D. Tex. Jan. 22, 2008) .................................................... 10

*Braun v. Lorilland Inc.*,
  84 F.3d 230 (7th Cir. 1996) ............................................................................................. 6, 7

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D.N.J. 2004) ...................................................................................... 2

*Daubert v. Merrill Dow Pharmaceuticals Inc.*,
  509 U.S. 579 (1993) ............................................................................................................ 1

*E.E.O.C. v. Manville Sales Corp.*,
  17 F.3d 1089 (5th Cir. 1994) .............................................................................................. 20

*GE Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*,
  2004 U.S. Dist. LEXIS 30714 (W.D. Tex., Oct. 21, 2004).............................................. 8, 10

*Harley v. Health Ctr. of Coconut Creek, Inc.*,
  518 F. Supp. 2d 1364 (S.D. Fla. 2007) ............................................................................... 20

*Hodges v. Mack Trucks, Inc.*,
  474 F.3d 188 (5th Cir. 2006) ............................................................................................... 8

*Hyde v. Vermeer Mfg. Co.*,
  2007 U.S. Dist. LEXIS 62201 (W.D. Tex. Aug. 7, 2007).................................................... 8

*In re Air Crash Disaster at New Orleans*,
  795 F.2d 1230 (5th Cir. 1986) ............................................................................................. 6

*Johnson v. Manitowoc Boom Trucks, Inc.*,
  484 F.3d 426 (6th Cir. 2007) ........................................................................................... 6, 7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................ 9

**Table of Authorities**
**(Continued)**

Page(s)

*Matrix Oncology, L.P. v. Priority Healthcare Corp.*,
  2007 U.S. Dist. LEXIS 95118 (N.D. Tex. May 30, 2007) ............................................ 15, 16

*Moore v. Ashland Chemical Inc.*,
  151 F.3d 269 (5th Cir. 1998) ........................................................................................... 7

*Pipitone v. Biomatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002) ....................................................................................... 8, 9

*Tyler v. Union Oil Co. of Cal.*,
  304 F.3d 379 (5th Cir. 2002) ......................................................................................... 11

*United States  v. 14.38 Acres of Land*,
  80 F.3d 1074 (5th Cir. 1996) ......................................................................................... 10

*United States ex rel. Klaczak v. Consol. Med. Transp.*,
  458 F. Supp. 2d 622 (N.D. Ill. 2006) ........................................................................... 8, 9

*United States v. Davis*,
  471 F.3d 783 (7th Cir. 2006) ......................................................................................... 14

*United States v. Delk*,
  586 F.2d 513 (5th Cir. 1978) ........................................................................................... 2

*United States v. Tse*,
  375 F.3d 148 (1st Cir. 2004)........................................................................................... 19

*United States v. Turner*,
  400 F.3d 491 (7th Cir. 2005) ......................................................................................... 14

*Viterbo v. Dow Chemical Co.*,
  826 F.2d 420 (5th Cir. 1987) ......................................................................................... 10

**STATUTES**

31 U.S.C. § 3729 ................................................................................................................. 15

**RULES**

Fed. R. Civ. P. 26(b)(2)(B)(vi) ........................................................................................... 6

Fed. R. Civ. P. 26(b)(4)(C)(i) ............................................................................................. 6

Fed. R. Evid. 403 ................................................................................................................. 1

Fed. R. Evid. 702 ........................................................................................................*passim*

Fed. R. Evid. 703 ................................................................................................... 1, 10, 11, 13

**Table of Authorities**
**(Continued)**

Page(s)

Fed. R. Evid. 704 ................................................................................................................ 1, 15

Fed. R. Evid. 705 ................................................................................................................... 10

Defendant Deloitte Consulting LLP ("Deloitte") files this Response in Opposition to Relators' Motion in Limine to Exclude Certain Opinions of Deloitte's Expert Timothy Renjilian, *Docket No*. 426 (hereinafter "Motion" or "Mot."), and in support thereof states as follows:

## I.  INTRODUCTION

Relators presume that by repeatedly calling Deloitte's expert Timothy Renjilian, CPA, a "hired gun," they can convince this Court to exclude his testimony, or to at least exclude "certain opinions" with which they disagree.  *See* Mot. at 1, 4, 5, and 6.  If by "hired" Relators mean that Deloitte retained Renjilian to provide expertise, opinion, and testimony in this case, then they are correct:  Renjilian, like every other expert for all parties in this case, including Relators' four designated experts, was duly compensated for his work in this matter.  And if by "gun" Relators mean that Renjilian's opinions deliver a stunning, if not fatal, blow to the "findings" or opinions of William Parrish and to Relators' theories in this litigation, then Relators are also correct.

But if by "hired gun" Relators mean to suggest that Renjilian does not base his opinions on his expertise and his independent, objective analysis of the relevant facts and issues, then Relators are categorically and demonstrably incorrect:  Renjilian is a CPA with extensive experience in the fields of auditing, Medicaid and Medicare compliance, and healthcare claim investigations, and all of his proffered opinions are within the scope of his expertise, relevant to the issues in this case, reliable, and therefore admissible under the standards of *Daubert v. Merrill Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702, 703, 704, and 403.

## II.  ARGUMENT

In their Motion, Relators seek to exclude all of Renjilian's testimony because he allegedly is a "biased" litigation consultant who purportedly does not meet the *Daubert* standards for admissibility and has "not perform[ed] the work that he was designated to do."  Mot. at 1-7.  In the alternative, Relators seek to exclude only "certain opinions" with which they disagree because they

argue the opinions are improperly "predicated . . . on irrelevant reports of administrative agencies,"

Mot. at 1 and 7-12, including congressional testimony and publicly available United States

Department of Health and Human Services, Office of Inspector General ("OIG") reports regarding

audits and investigations of school-based Medicaid claiming specifically, and Medicaid/Medicare

audits in general.  Finally, Relators seek to exclude "potential testimony" that they imagine will

"invade[] the province of the jury," or "unfairly prejudice" the Relators.  Mot. at 1 and 7-12.  As

demonstrated below, Relators' arguments evince a fundamental misunderstanding of both the

Federal Rules of Evidence ("Rules") and the opinions Renjilian intends to offer.

**A.     Renjilian's Opinions**

Renjilian, a CPA, is a "rebuttal witness" who predominantly examines and critiques the

methodology and "findings" offered by Relators' designated expert, William Parrish, who is also a

CPA.  *See United States v. Delk,* 586 F.2d 513, 516 (5th Cir. 1978) ("The purpose of rebuttal

evidence is to explain, repel, counteract, or disprove the evidence of the Adverse party.") (internal

quotations omitted); *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) ("Rebuttal evidence

is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse

party.") (internal quotations omitted).  Renjilian's opinions, based on his credentials and extensive

CPA experience with audits and reviews of healthcare claims in the False Claims Act ("FCA") and

other contexts, properly explains, repels, counteracts, and disproves Parrish's methodology and

"findings."  *See* Tr. 202:20-24 ("And my opinions, again, focus on the work done by Parrish and

what conclusions can be drawn from that work."); Tr. 77:14-22; 94:17-20; 137:6-16 (Renjilian

offers "observations" on Parrish's "approach," "methodology," and "assumptions").[1]

---

[1] Relators attached a copy of Renjilian's Deposition Transcript as Exhibit B to their Motion.
*Docket No.* 426.  Deloitte therefore refers to the transcript in this Opposition as "Tr." followed
by the relevant page and line numbers and does not attach an additional copy of the transcript.

According to Renjilian, there are common practices employed by CPAs and Medicaid claims reviewers to test the validity of health care claims, including independent efforts to assess the validity of claims.  *See* Renjilian Rep.[2]  Renjilian opines that Parrish did not follow such commonly accepted practices and summarized his criticisms of Parrish's methodology as follows:

    1.     It fails to define the standard used for identifying "false claims" and makes no distinction between fraudulent claims and other erroneous claims, and thus conflicts with accepted claim review practice;

    2.     It is based on a number of unsupported assumptions;

    3.     It fails to distinguish between claim submission issues and document retention issues, and applies an excessively strict standard that is heavily biased against Deloitte;

    4.     It ignores contemporaneous documentation supporting the reasonableness of the amounts claimed;

    5.     It places undue reliance on the ability of other parties, including Relators' counsel and paralegals, to search for and identify documentation;

    6.     It fails to consider a wide range of issues that could have impacted the availability of the documentation sought; and

    7.     It is based on an overly narrow approach that does not consider additional available sources of relevant information.

Renjilian Rep. at 37-38.[3]  Thus, Renjilian concludes, Parrish's entire methodology – his review of the documents produced in 2007 by the nonparty school districts and then unilaterally selected for

---

[2]  Relators attached Renjilian's Report as Exhibit C to their Motion.  *Docket No*. 426.  Deloitte therefore refers to the Report in this Opposition as "Renjilian Rep." and does not attach an additional copy.

[3]  In their Motion, Relators make much of Renjilian's expert designation and appear to consider it controlling in this matter.  *See* Mot. at 2-3.  Indeed, rather than quote Renjilians' actual opinions, Relators quote at length from Deloitte's expert witness designation.  *Id*.  Yet, as a "rebuttal" expert, Renjilian did not fully appreciate the weaknesses of Parrish's efforts until after Parrish produced his report and "findings" on August 15, 2007.  Tr. 91:10-19; 240:21-24; 244:5-245:11.  Relators do not dispute that Renjilian expressed his opinions in his Report (and in his testimony), so the Court should consider Renjilian's own, actual opinions when considering the admissibility thereof.

copying by Relators' counsel – is fundamentally and fatally flawed.  And, therefore, Parrish's "findings" are not relevant nor reliable for Parrish's stated purpose – *i.e.*, "to evaluate damages that resulted from the submission of ***false claims***."  Parrish Report at 12 (emphasis added) (Exh. 1).

Remarkably, despite Relators' present attack, ***Parrish himself candidly testified that he did not disagree with the majority of Renjilian's criticisms***.  *See* Parrish Tr. 298:11-309:8 (Exh. 2).  Now it appears that Relators' counsel, unlike their own expert, recognize the significance of Renjilian's opinions and therefore, and without support in their Motion, seek to exclude them.

## B.    Renjilian Is Qualified To Offer The Opinions Set Forth In His Expert Report And Confirmed At His Deposition

In an attempt to undermine Renjilian's qualifications, Relators (in what has now seemingly become a routine briefing strategy) resort to name calling rather than legal argument.  *See* Mot. at 1, 3-4 (calling Renjilian a "partisan advocate" and a "hired gun").  And Relators' Motion is short on law and on facts, both of which show that Renjilian is qualified to critique Parrish's review.  Beyond using (repeatedly) the term "hired gun," Relators fail to define the term and simply assume that by using it the Court should exclude Renjilian's opinions.

Pursuant to Rule 702, an expert may be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *see also Ariwodo v. United States Customs & Immigration Enforcement*, 2007 U.S. Dist. LEXIS 11553, *9 (S.D. Tex. Feb. 20, 2007) (Exh. 3) (allowing testimony of immigration inspector, "a purported fraud expert," regarding plaintiff's "sham marriage" to defraud the United States government based upon "his extensive experience in the field of fraud detection.").  Renjilian, with his education, training, and experience in auditing, healthcare claims and compliance review, and "fraud detection," is ideally qualified to critique Parrish's Report.  *Id*.

In their rush to define him, Relators conveniently ignore Renjilian's sixteen years of experience with top accounting firms (including Arthur Andersen and KPMG) in the fields of

auditing, forensic accounting, compliance consulting, and "internal investigations . . . post Sarbanes-Oxley." Tr.  41:8-45:12; Renjilian Rep. at Ex. I.  They also ignore the fact that Renjilian has "a great deal of experience" doing healthcare compliance work and helping corporations bring their systems and procedures into compliance with the law.  Tr. 328:23-329:5.  In fact, Renjilian currently serves as part of an "Independent Review Organization" under a settlement agreement between the federal government and a healthcare provider in connection with an FCA case that was pending in the Western District of Texas.  *See* Tr.  20:15-29:22.

Renjilian also has extensive knowledge of audit and investigation procedures gained in part from his experience with "many internal investigations and . . . investigations in response to False Claims Act allegations."  Tr. 238:17-25; *see also id.* 342:2-6.  At his deposition, Renjilian specifically testified that his "relevant expertise" in this case is analyzing potential fraud allegations "from a, sort of, process and methodology standpoint."  Tr. 68:16-25.  As a result of his experience and knowledge regarding audit and investigation procedures and methodology, Renjilian is uniquely qualified to testify regarding the scope of his work in this case—*i.e.*, "respond[ing] to Mr. Parrish's report and . . . comment[ing] on his methodology."  Tr. 252:17-19;[4] *see also* Renjilian Rep. at 1 (scope of engagement was "to review the report of plaintiff's witness William M. Parrish, Jr. . . . [and] consider[] the overall approach used by Mr. Parrish in performing his work").

Finally, in the face of Renjilian's impressive credentials and experience, Relators assert Renjilian's resume contains only "litigation-related consulting services" and that "[h]is work, publications, and engagements are not scholarly or field-related, but litigation-related."  Mot. at 5. Because Renjilian's expertise lies in the field of auditing and compliance consulting, his work

---

[4] *See also* Tr. 94:17-20 (Renjilian "focused primarily just on analyzing [Parrish's] report and methodology"); 102:16-103:21 (Renjilian evaluated Parrish's "key assumptions," and "methodology").

understandably involves disputes.  But that is not determinative of whether his testimony should be excluded.  *See In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1234 (5th Cir. 1986) ("[T]he professional expert is now commonplace.  That a person spends substantially all of his time consulting with attorneys and testifying is not a disqualification.").  Indeed, the American Institute of Certified Public Accountants ("AICPA"), of which Renjilian is a member, has ethical and professional standards governing such consulting services by professionals in Renjilian's field (which, notably, is the same field in which Parrish ostensibly practices).[5]  Renjilian's professional affiliations, presentations and publications (topics include auditing, investigations, and compliance) and work experience clearly speak to his qualifications.  *See* Renjilian Rep. at Ex. I.

In light of the foregoing facts, Relators' cases are inapposite.  *See* Mot at 4.  Relators' cases **do not stand** for the proposition that just because an expert is being paid, he is unqualified and/or that his testimony must be excluded, as this is true for every testifying expert, including all experts in this litigation.  *See Braun v. Lorilland Inc.*, 84 F.3d 230, 238 (7th Cir. 1996).[6]

For example, in *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426 (6th Cir. 2007), the court criticized plaintiff's expert for offering opinions "conceived, executed, and invented solely in the context of this litigation," *id.* at 435 (quoting with approval the lower court), which were "not based on independent research."  *Id.* at 434.  But here, unlike the expert in *Johnson*, Renjilian's

---

[5]  *See* AICPA "Statement on Standards for Consulting Services," "Applicability of Attestation Standards to Litigation Services," and guidance regarding "business valuation and forensic and litigation services," available at http://www.aicpa.org.

[6]  *See also* Fed. R. Civ. P. 26(b)(2)(B)(vi) (an expert's report "must contain … a statement of the compensation to be paid for the study and testimony in the case."); Fed. R. Civ. P. 26(b)(4)(C)(i) (a court "must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery"); Advisory Committee Notes to the 1970 Amendments to Rule 26 ("it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum.").

"testimony flows naturally from his own current or prior . . . field work" and not from some plan

"conceived, executed, and invented solely in the context of this litigation." *Id.*[7]

Similarly, that Renjilian "testifies for money does not necessarily cast doubt on the

reliability of his testimony." *Id.* at 434. Despite Relators' bald assertions to the contrary, Renjilian

clearly provided a competent and independent analysis based on his prior work experience as an

auditor. His qualifications and experience bear directly on the questions he addresses, and his

deposition clearly demonstrates his independence. *See*, *e.g.*, Tr. 155:3-6 (Renjilian would not

consider information, "until [he] saw what came in from the source."); Tr. 157:14-158:17 ("I would

and would still hesitate to . . . rely on what defense counsel told me about their observations of that

process as evidence for my work. You know they [Deloitte's counsel] may have given me some

observations of that process as evidence for my work … that I'm not recalling because I didn't give

them any specific weight in my thought process. But I was looking for, you know, to the extent I

could find it, more objective, verifiable evidence."). Further, Renjilian's team did independent,

"original research" to obtain and consider "OIG reports" and "similar" materials. Tr. 168:14-23.

In sum, Renjilian's opinions are his own and flow from his professional experience and the

facts of this case. The record demonstrates that Renjilian possesses the requisite knowledge, skill,

---

[7] Relators also cite *Moore v. Ashland Chemical Inc.*, 151 F.3d 269 (5th Cir. 1998), in which the Court determined there was not "an adequate 'fit' between the data and the opinion proffered" by the expert, *id.* at 276, in part because the expert "gave no reason why the[] items [upon which he relied] were helpful in reaching his conclusion on causation." *Id.* at 278. Here, in contrast, Renjilian's opinions obviously flow not only from his experience, but from his observations in this case. Similarly, Relators cite *Braun*, 84 F.3d 230, in which the court excluded the testimony of an expert who conducted a test that he had never before performed and that was outside of his area of expertise. *Id.* at 233-235. Unlike the expert in *Braun*, Renjilian testified regarding a topic well within his scope of expertise and he arrived at his opinions "through the methods that [he] use[s] when [he is] doing [his] regular professional work." *Id.*

experience, training, and education necessary to qualify him as an expert under Rule 702 and to testify as to the adequacy of Parrish's methodology and "findings."

**C.     Renjilian's Opinions Are Reliable And Admissible Under Rule 702 And *Daubert***

Pursuant to Rule 702 and *Daubert* and its progeny, opinion testimony from a qualified witness is admissible if the opinion will assist the trier of fact, "the testimony is based upon sufficient facts or data, [] the testimony is the product of reliable principles and methods, and [] the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702. "In short, expert testimony is admissible only if it is both relevant and reliable."  *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir. 2002).

"[W]hether a proposed expert should be permitted to testify is case, and fact, specific." *Hodges v. Mack Trucks, Inc*., 474 F.3d 188, 194 (5th Cir. 2006); *GE Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd*., 2004 U.S. Dist. LEXIS 30714, *6-7 (W.D. Tex., Oct. 21, 2004) (Exh. 4) ("Trial courts enjoy broad latitude when deciding how to determine reliability because the gatekeeping function must be tied to the particular facts of the case.").  The Court's admissibility determination is also ***expert*** specific.[8]  Renjilian's testimony, like any other "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training," *Pipitone* 288 F.3d at 247, so long as he, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

---

[8]  *See*, *e.g*., *Hyde v. Vermeer Mfg. Co.*, 2007 U.S. Dist. LEXIS 62201, *39-40 (W.D. Tex. Aug. 7, 2007) (Exh. 5) (Magistrate Judge Nowak recommending to Judge Biery that he deny motions to exclude two of the plaintiff's experts' testimony and exclude certain opinions offered by defendant's expert); *United States ex rel. Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 671-72 & n.39 and 40 (N.D. Ill. 2006) (rejecting relators' *Daubert* challenges and admitting defendants' two experts' opinions, but excluding testimony of relators' two experts under *Daubert* standards).  Accordingly, Deloitte will not herein respond to Relators' irrelevant and repeated attempts to compare and contrast ***their*** experts' qualifications and opinions with

[Footnote continued on next page]

characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526
U.S. 137, 152 (1999).

Renjilian's opinions, and the basis therefor, are set forth in detail in his 38-page Report, and
Renjilian discussed those opinions at length during his deposition.  Renjilian, time and time again,
testified at his deposition that his "primary focus was to analyze Mr. Parrish's approach."  *See*, *e.g.*,
Tr. 138:6-16.  Review of Relators' Motion reveals that they do not challenge any of Renjilian's
***actual*** opinions – *i.e.*, that certain fundamental failures in Parrish's "overall analytical framework"
and Parrish's "unstated and untested assumptions" ultimately "render Mr. Parrish's analysis
unreliable" to achieve his stated purpose of measuring FCA damages.  Renjilian Rep. at 2.  And
Renjilian's lengthy, detailed Report and deposition testimony demonstrate that Renjilian
approached his task with the "level of intellectual rigor" expected of a CPA.  *See* Tr. 155:3-6;
157:14-158:17.  Thus, and as a result of Relators' misunderstanding of the scope of Renjilian's
opinions, Relators' vague *Daubert* challenge fails as little more than a "red herring because
[Relators] are unable to challenge [Renjilian's] well-founded opinion on a number of issues that
meaningfully undermine [their] case."  *Klaczak.*, 458 F. Supp. 2d at 671-72 & n.39 and 40
(rejecting *Daubert* challenge and permitting experience-based expert testimony in FCA action that
was "supported by OIG's assessment of Medicare payments").

---

[Footnote continued from previous page]
    Renjilian's qualifications and opinions, *see* Mot. at 2, 4, 5, 9, n.7, and n.9, except to the extent it
    is relevant to the Rule 703 analysis, *infra*.

D.   **Renjilian's Opinions Premised On OIG Reports And Other State And Federal Guidance Comply With Rule 703**

Relators suggest that "Mr. Renjilian's purported 'opinions' about what does and does not constitute fraud should be excluded" because they are "based on limited OIG and other audits." Mot. at 7.[9]  Relators' "argument" misses the mark.

First, as a legal matter, Relators' attack on the factual basis of Renjilian's opinions (*i.e.*, OIG reports) is not a proper ground for exclusion.  Rule 703 provides that an expert's opinion is admissible even when the basis for and facts underlying the opinion are not admissible.  Fed. R. Evid. 703.[10]  Further, both Rules 703 and 705 provide that the Court ***may***, but need not, admit into evidence the "facts or data" that are considered by an expert "that are otherwise inadmissible"  Fed. R. Evid. 703 & 705.  Typically, therefore, "[w]hen an opponent challenges the bases and sources of an expert's opinion*,* the Court should defer to the jury, as such questions" do not "touch on" the "admissibility" of the evidence.  *Bragg v. Edwards Aquifer Auth*., 2008 U.S. Dist. LEXIS 4623, *5 & n.4 (W.D. Tex. Jan. 22, 2008) (Exh. 6) (citing *United States  v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987))); *GE Capital Bus. Asset Funding Corp.*, 2004 U.S. Dist. LEXIS 30714 at *11 ("the

---

[9]  This argument has already been presented by Relators in their equally unpersuasive Motion to Exclude Certain Opinions of Deloitte Consulting LLP's Expert Roberta Kreb, in which Relators similarly imagine that Dr. Kreb impermissibly offers opinions regarding fraud.  *Docket No*. 368. Deloitte directs the Court to its Response and Sur-Reply in opposition to that motion, *Docket Nos*. 392 and 424, but for the Court's convenience, repeats many of its arguments herein.

[10]  At an earlier stage of this litigation, when the admissibility of OIG reports was not directly at issue, Deloitte did (as Relators note) state "the OIG report is inadmissible in this proceeding." Mot. at 11 (citing *Docket No*. 136 at 6).  But Relators deceptively omit the entire sentence. Deloitte stated, "Although the OIG Report is inadmissible in this proceeding, Deloitte invites the Court to review it."  *Docket No*. 136 at 6.  This was because, as Deloitte further argued, the OIG did not conclude that any of the reviewed SHARS billing practices or claims were fraudulent, and, thus, the OIG report "undermines Relators' allegations of fraud."  *Id*.  Deloitte's representations at that time were entirely consistent with Renjilian's testimony.

reliability of data underlying an expert's opinion . . . should not serve as basis for its exclusion.")
(citing *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 392-393 (5th Cir. 2002)).

Second, as a factual matter, Renjilian has not "specifically expressed an opinion on the substance and scope of other audits, but [has instead] used [his] experience in those to express opinions on Mr. Parrish's approach." Tr. 77:7-22; *see also* Tr. 190:25-191:5 (Renjilian "didn't form conclusions on whether particular practices that were alleged by Deloitte were appropriate or not appropriate[, but] just focused on Mr. Parrish's approach to analyzing things.").  Indeed, Relators acknowledge that "[e]xtensive investigative steps are needed to bring a criminal or civil fraud case against a provider."  Mot. at 8 (curiously Relators cite testimony from the Inspector General of the OIG (Daniel Levinson) to support their argument for exclusion, while simultaneously suggesting that Renjilian improperly considered that and similar OIG materials). Relators just fail to recognize the significance of the OIG testimony:  It is precisely because Parrish did not take any, let alone "extensive" investigative steps to identify fraudulent claims that Renjilian opines Parrish's testimony is not reliable or probative of Relators' FCA allegations.  *See* Renjilian Rep. at 37-38.

In any event, to support his opinions, Renjilian considered certain Congressional testimony, State and Federal guidance, and OIG reports and audits, and he opined that these authorities demonstrate that a lack of documentation in general (or specialized transportation documentation in particular) is not synonymous with fraud.  *See*, *e.g*., Renjilian Rep. at 3-6, 12-13,15-19; Tr. 313:20-314:18.  OIG reports considering school-based Medicaid claiming comprise precisely that type of information that an expert should consider in forming opinions in this litigation.  *See* Fed. R. Evid. 702 and 703.  And Renjilian's opinions based upon such reports fall squarely within his expertise and are exactly the type of opinions that will assist the trier of fact, not supplant their judgment.  In

light of Relators' own prior representations to the Court, *see Docket No*. 129,[11] and this Courts'

prior holding, *see Docket No*. 134,[12] regarding the relevance of OIG reports, it is clear that

Relators' *Daubert* challenge is little more than a thinly-veiled and misdirected attempt to exclude

evidence of statements made by the federal government that ***support*** Renjilian's (as well as other

experts') opinions and undermine Relators' theory of liability.

      Notwithstanding the imbalance of Relators' position,[13] it was not "improper" for Renjilian

to consider OIG reports and statements, as many of those reports discussed in detail school-based

Medicaid claiming and billing practices (such as billing for special transportation) similar to those

challenged by the Relators in this litigation.  Indeed, Rules 702 and 703 provide that experts'

opinions should be based upon sufficient and reliable facts and information of "the type reasonably

---

[11] On January 11, 2006, Relators filed in this Court a "Supplement" for the sole and specific purpose of "bring[ing] to the Court's attention" the findings contained in an OIG report that Relators asserted were "clearly relevant to the claims and defenses asserted in this action." *Docket No*. 129.  Relators further represented to this Court that "[*e*]*xperts designated by all parties* will need to obtain and review the data underlying the OIG's reports . . . ." *Docket No*. 129 (emphasis added).  Now that Renjilian offers this information to support his opinion (that Parrish's audit was flawed in part because he did not consider all relevant evidence), Relators complain that the OIG audits are not relevant or admissible.

[12] Relying in part on Relators' prior representations, this Court found that "it appears to the Court that the OIG final report . . . is a significant event in this dispute," which "appears to have changed the complexion of the case," and questioned whether the Government might reconsider its decision not to intervene in this litigation in light of the OIG report.  *Docket No*. 134 at 11-15 & n.1.  Tellingly, despite that specific invitation, the government again refused to intervene.

[13] Not surprisingly, each of Relators' four designated experts cited to OIG reports as materials upon which they relied in forming their opinions, which makes Relators' current assertion that Renjilian improperly relied on these same and other OIG reports all the more strange.  *See* Ex. C to Anderson Rep. (Exh. 7); Ex. B. to Gilbert Rep. (Exh. 8); Ex B to Parrish Rep. (Exh. 9); and Levine Rep. at 3 (Exh. 10).  In fact, Anderson specifically testified that he relied on OIG audit reports in reaching his opinions.  *See, e.g.*, Anderson Dep. 251:2-6 (Exh. 11) ("Q: [W]ere you aware of any of the practices that you allege were occurring on pages 17 through 28 of your report? A: Yes.  Because I read the Federal OIG report.").  Further, co-defendants' experts McSwane, (Report at 15-17; Exh. 12), Richardson (Report at 11; Exh. 13), and Seiffert (Report at 15-17; Exh. 14) reviewed OIG reports as well.  Under Rule 703, the Court should ascertain

[Footnote continued on next page]

relied upon by experts in the particular field." Fed. R. Evid. 702, 703.  Even assuming for purposes of this Motion that the OIG reports Renjilian considered are themselves inadmissible, an expert's sources need not be admissible.  *See* Fed. R. Evid. 703.  Instead, what obviously concerns Relators about the reports is that ***in none of the reports did the federal government conclude that the alleged practices constituted fraud***—which is precisely the reason Renjilian criticizes Parrish for not considering these reports.

Renjilian's reliance upon federal testimony, Medicaid audits, OIG reports, and other available State and Federal guidance is expected and reasonable.  In particular, because the OIG has a responsibility to report both to the Secretary of Health and Human Services and to Congress any Medicaid program and management problems and recommendations to correct them, which is carried out through a nationwide network of audits, investigations, inspections, *see* http://oig.hhs.gov/organization/OIGmission.html (last visited Mar. 6, 2008), the OIG and its audit reports are a reliable source of information in this case.  *See* Fed. R. Evid. 703.

In sum, far from being improper, one would expect that an expert intending to offer opinions regarding claims review in the context of an FCA case would consult reports issued by the federal agency charged with enforcing Medicaid laws and auditing school-based Medicaid claims.  In fact, this is, in essence, one of the opinions Renjilian offers.  Indeed, under Relators' own logic and the Court's prior rulings, Renjilian would be ***irresponsible*** if he did not consider OIG reports which might affect his opinion—as would Parrish.  *See Docket Nos*. 129 and 134.  Accordingly, no Rule 702, 703, or *Daubert* challenge can stand against any of Renjilian's opinions based on his consideration of OIG reports and Congressional testimony.

---

[Footnote continued from previous page]
whether "experts in the field" would rely upon OIG reports in formulating their opinions. Clearly, all experts in this case have relied upon OIG reports, and so should this Court.

**E.    Renjilian's Opinions Do Not Present Impermissible Legal Opinions Or Offend Rule 704**

Relators also mistakenly argue that Renjilian will opine "that Deloitte's conduct was not fraudulent" and that this opinion will "improperly usurp the province of the jury."  Mot. at 1, 7-8.  But, strangely, Relators first imagine, then criticize, an opinion that Renjilian does not intend to offer—whether Deloitte committed fraud.  *See*, *e.g.*, Mot. at 8 ("whether or not it is explicitly stated, it is clear that Renjilian intends to offer opinions that Deloitte's conduct was not fraudulent.").  Renjilian has not offered any opinion that Deloitte did (or did not) violate the FCA or that Deloitte did (or did not) commit fraud.  Rather, Renjilian emphasized, his opinions were not centered on whether or not Deloitte committed fraud, but instead on Parrish's failure to analyze the evidence available to him.  *See*, *e.g.*, Tr. 205:18-20 ("again, my opinions focus on Mr. Parrish's work and not on the propriety of Deloitte's actual conduct").

As support for his criticism of Parrish's work, Renjilian considered the OIG audits and opined that these audits were evidence that Relators' expert William Parrish should have considered "in assessing Deloitte's conduct."  Renjilian Rep. at 15.  Renjilian properly questioned why Parrish did not consider other cases in which no fraud or regulatory violations were found.  Renjilian's testimony would properly assist the jury in understanding whether Parrish's "findings" were flawed and unreliable due to Parrish's failure to consider whether Defendant's activities at issue in the instant case were consistent with industry practice and complied with available state and federal Medicaid rules and regulations.  These opinions fall squarely within Renjilian's expertise and are exactly the type that will ***assist*** the trier of fact, not supplant its judgment.  *See United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006) (noting that experts may testify about "whether transactions comply with regulations"); *see also United States v. Turner*, 400 F.3d 491, 499 (7th

Cir. 2005) (upholding admissibility of testimony that certain transactions seemed to be structured to avoid reporting requirements).[14]

Finally, Relators ignore Rule 704, which provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. Relators do not allege that Renjilian makes any incorrect statements on the law (nor could they) and Renjilian does not impermissibly opine on any ultimate legal issues. Renjilian's opinions are not "legal conclusions" or bald assertions as to the "ultimate issues" in this case but are well-formed opinions based on his review and explanation of the facts and circumstances in this case. Thus, Renjilian's opinions do not offend Rule 704.

**F.    Relators Incorrectly Fault Renjilian For Refusing To Alter His Opinions In Response To Relators' Counsels' Hypothetical Questions During His Deposition**

Relators criticize Renjilian for refusing to alter his opinions in response to hypothetical questions asked by Relators' counsel during his deposition. Mot. at 6, 9, and n.7 (Relators argue that Renjilian should have been willing to "reconsider conclusions" based upon Relators' assumptions). But as demonstrated below, Relators' hypotheticals were based on irrelevant and unsupportable assumptions. Accordingly, as a matter of law, Relators' argument does not demonstrate bias nor support the exclusion of Renjilian's testimony. *See, e.g.*, *Matrix Oncology, L.P. v. Priority Healthcare Corp.*, 2007 U.S. Dist. LEXIS 95118, *8 (N.D. Tex. May 30, 2007)

---

[14] Relators suggest Renjilian is "biased" because he faults Parrish for not defining a "false claim," but Renjilian would not provide a legal opinion as to what constitutes a false claim at his deposition. *See* Mot. at 5. But Relators misconstrue Renjilian's opinions and the import thereof. Relators ***concede***, as they must, that Parrish's sole –indeed exclusive – purpose in this litigation was to ostensibly determine which of the sample items selected by Relators' statistical expert would give rise to damages under the FCA. *See* Mot. at 2-3 and Parrish Report at 12. By law, only "false" or fraudulent "claims" can give rise to damages under the FCA. 31 U.S.C. § 3729. Accordingly, Renjilian faults Parrish for not defining a "'false claim' for purposes of his review." *See* Renjilian Rep. at 2-5.

(Exh. 15) ("This Court cannot expect an expert hired by [one party] to consider the facts as cast by [the opposing party].")

Nevertheless, Renjilian repeatedly testified that he was "zeroing in on the stuff that was particularly relevant to [Parrish's] process and within [Renjilian's] area of expertise." Tr. 243:15-17; *see also* Tr. 245:19-246:4. Renjilian repeatedly testified that he failed to see the relevance of the assumptions that Relators' counsel was asking him to make. *See*, *e.g.*, Tr. 103:12-21 ("irrespective of why [the school district documents] weren't produced . . . if they weren't produced, I think that's a problem in [Parrish's] assumption when he comes to classifying his claims."); Tr. 111:18-112:3 ("irrespective of why that happened, I believe that my criticism of [Parrish's] assumption remains valid."). Thus, Relators' attempt to criticize Renjilian for his unwavering opinions in the face of irrelevant assumptions speaks only to the objectivity and care with which Renjilian reached his opinions in the first instance and does not (and cannot) demonstrate that his opinions are biased or unreliable. *See Matrix Oncology*, 2007 U.S. Dist. LEXIS 95118 at *7-8.

Further, Relators misrepresent Renjilian's testimony and suggest that he relied upon "fabricat[ed]" facts including an "issue of Deloitte's creating" regarding the lack of clarity and consistency of federal and state guidance. Mot. at 9 n.7. Relators' accusations against Deloitte in this regard are baseless (and insulting). As Relators know, the federal government itself has repeatedly acknowledged that its guidance regarding school-based Medicaid claiming in general, and documentation requirements and special transportation claiming in particular, was "unclear," and "confusing and inconsistent," during the time period under Parrish's review.[15]   And, in any

---

[15]  *See*, *e.g.,* Department of Health and Human Services ("HHS") Review of Medicaid Transportation Claims made by School Health Providers in New York State (A-02-03-01008) at ii (OIG "set aside" school-based special transportation claims for consideration by CMS and the
[Footnote continued on next page]

event, Renjilian testified, "I'm not going to opine specifically on whether the requirements

themselves were clear and consistent."  Tr. 177:20-25.  Instead, he properly offers "opinions as to

whether Parrish considered that and incorporated potential lack of clarity or lack of consistency in

his work."  Tr. 177:20-23.

**G.      Relators Incorrectly Fault Renjilian For Failing To Remedy The Deficiencies In
          Their Own Expert Parrish's Methodology**

Relators imagine that Renjilian's "conclusions may have been fundamentally different had

he chosen to attend the school district document reviews."  Mot. at 6, n.4 and 5.  Relators' attack

misses the mark.  Because Renjilian's opinions examined Parrish's actions (or inactions) and

challenges Parrish's admittedly untested assumptions regarding the availability in 2007 of

documentation supporting SHARS claims submitted as long ago as 1992, whether or not Renjilian

or Deloitte's counsel attended the school districts' document productions is irrelevant.  *See* Tr.

152:3-6 ("I didn't see the defense counsel role in the production process as being material to the

conclusions reached by Mr. Parrish.").  Deloitte and Renjilian neither performed an audit in this

---

[Footnote continued from previous page]

State because "Federal Medicaid law and regulations require that services be documented but do
not specify how transportation services should be documented.")
(http://oig.hhs.gov/oas/reports/region2/20301008.htm); HHS Review of Medicaid Claims for
School-Based Health Services in New Jersey (A-02-03-01003) at ii (same)
(http://www.oig.hhs.gov/oas/reports/region2/20301003.htm); Medicaid: Questionable Practices
Boost Federal Payments for School-Based Services (GAO/THEHS-99-148, June 17, 1999)
"HCFA has not provided clear or consistent guidance …, resulting in confusion")
(http://www.gao.gov/archive/1999/he99148t.pdf); Medicaid in Schools: Improper Payments
Demand Improvements in HCFA Oversight (GAO/HEHS/OSI-00-69, Apr. 5, 2000) (noting
"confusing and inconsistent guidance") (http://www.gao.gov/archive/2000/h600069.pdf);
Medicaid in Schools: Poor Oversight and Improper Payments Compromise Potential Benefit
(GAO/T-HEHS/OSI-00-87, Apr. 5, 2000) ("HCFA has historically provided little or
inconsistent direction and oversight of Medicaid reimbursements for school-based claims;"
noting "inconsistency and confusion.") (http://www.gao.gov/archive/2000/h600087t.pdf);
Medicaid and Special Education: Coordination of Services for Children with Disabilities is
Evolving," at 18 (GAO/HEHS-00-20 Dec. 1999) ("federal guidance on Medicaid coverage for
school-based services is unclear and inconsistent;" noting "[c]onfusion over proper billing
[Footnote continued on next page]

case, nor were they charged with collecting or reviewing documents to help Relators prove (or

disprove) violation of the FCA.  It was not, after all, Deloitte's responsibility to demonstrate that

each and every SHARS claim submitted on behalf of Deloitte's school districts was "not false."

Indeed demanding as much would invert the burden of proof in this case.  Further, Deloitte and its

expert certainly did not, and were not required to, undertake any effort to remedy the defects in

Relators' counsels' document collection efforts (of which there were many), which formed the basis

for Parrish's "findings," as to ostensibly "missing" documents.  This is particularly true because

Deloitte and Renjilian did not receive Parrish's Report (or any draft thereof), and were not privy to

his "methodology," until August 15, 2007, several months *after* the school district productions.

Thus, it is understandably irrelevant whether Deloitte's counsel or Renjilian attended the

school districts' document productions.  The "universe" of documents relevant to Renjilian's review

of Parrish's review was the universe of documents made available to Parrish by Relators' counsel

and which formed the basis for Parrish's "findings."  *See* Tr. 267:12-15 ("our effort here was

primarily to see if we could replicate the data that was in Parrish's files.  And just make sure we

were looking at apples and apples.")  Without question, Renjilian had all such documents available

to him for his review.  *See*, *e.g*., Tr. 79:12-81:3 (Renjilian testified that he was provided with access

to all non-privileged documents exchanged during discovery in this case).  And the "concerns"

Renjilian identified were "corroborat[ed]" by what Renjilian considered "information from the

source," including "a sworn affidavit from an individual representative of a school district," that

undermined Parrish's assumption regarding the availability of school district documentation.  Tr.

155:14-10; *see also* 158:15-17; 158:22-25; 160:14-19.

---

[Footnote continued from previous page]
procedures, coupled with a lack of clear and consistent guidance from the federal government")
(http://www.gao.gov/archive/2000/he00020.pdf).

**H.    The Probative Value Of Renjilian's Opinions Is Not Substantially Outweighed By Any Danger Of Unfair Prejudice Or Confusion**

Finally, Relators suggest that "exclusion of Renjilian's testimony of these audits is warranted under Rule 403."  Mot. at 11.  Relators argue that because the OIG reports "have little, if any, probative value" any testimony regarding the reports "creates the risk of unfair prejudice to Relators."  Mot. at 12.  But ***Relators have not moved in limine to exclude the reports***; they have moved to exclude Renjilian's opinions properly based, in part, upon those reports.  Further, Relators again misstate the substance of Renjilian's opinions—he has not and will not testify that "the audits prove that no fraud was committed in this case."  *Id.*

Moreover, Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "The burden under Rule 403 is on the party opposing admission, who must show that the probative value is *substantially outweighed* by the danger of *unfair prejudice*."  *United States v. Tse*, 375 F.3d 148, 164 (1st Cir. 2004) (internal quotations omitted).  Indeed, there is a presumption in favor of admitting relevant evidence, and the Fifth Circuit "has consistently held, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material.  The prejudice must be unfair."  *Ballou v. Henri Studios, Inc*., 656 F.2d 1147, 1155 (5th Cir. 1981) (internal citations and quotations omitted).

Relators' argument devoted to this issue in their Motion (at 12) fails to meet their burden to demonstrate that the probative value of this relevant evidence is "substantially outweighed" by the danger of unfair prejudice.  In fact, Relators make no effort to apply the controlling legal standards to the testimony at issue, stating only that the OIG reports "have little, if any, probative value."

Mot. at 12.[16]  This present assertion, as demonstrated above, is wholly belied by Relators' prior

representations regarding OIG reports.  *See Docket No*. 129 (and n.11 & 12, *supra*).

### III.  CONCLUSION

For the foregoing reasons, Relators' Motion should be denied.  The Court should admit all

of Renjilian's expert opinions, including those few "certain opinions" that Relators alternatively

challenge.

DATED:  March 6, 2008

<div style="margin-left: 40%;">

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Robert C. Blume

   Robert C. Blume, P.C. (admitted *pro hac vice*)
   Jessica Sanderson (admitted *pro hac vice*)
   Evan Tilton (resident in GD&C Dallas office)
   Monica K. Loseman (admitted *pro hac vice*)
   1801 California Street, Suite 4200
   Denver, Colorado 80202
   Telephone:  303-298-5700
   Facsimile:  303-296-5310

**ATTORNEYS FOR DEFENDANT DELOITTE
CONSULTING LLP**

   Joseph R. Knight
   State Bar No. 11601275
   1500 San Jacinto Center

</div>

---

[16] Relators rely on three wholly inapposite employment cases, wherein plaintiffs claiming they had been discriminated against sought to introduce at trial reports and letters from the Equal Employment Opportunity Commission and an administrative opinion stating that the defendant in each respective case had discriminated against the plaintiff.  *See* Mot. at 9-10 (citing *E.E.O.C. v. Manville Sales Corp.*, 17 F.3d 1089, 1095 (5th Cir. 1994); *Harley v. Health Ctr. of Coconut Creek, Inc.*, 518 F. Supp. 2d 1364, 1370 (S.D. Fla. 2007); and *Bell v. Gonzales*, 2005 WL 3555490, at *4 (D.D.C. Dec. 23, 2005)).  The logical disconnect between the cases Relators cite and the admissibility of Renjilian's opinions is obvious.  Relators' arguments do not pertain to ***Renjilian's opinions***, but to the OIG audits and government findings that support his opinions, the admissibility of which is not presently at issue in this case, because as set forth above, the reports need not be admissible pursuant to Rule 703.

98 San Jacinto Blvd.
Austin, TX  78701-4059
Telephone:  (512) 322-2500
Facsimile:  (512) 322-2501

**ATTORNEY-IN-CHARGE FOR DEFENDANT
DELOITTE CONSULTING LLP**

**OF COUNSEL:**

F. Joseph Warin
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this sixth day of March, 2008, an electronic version of the foregoing document was served by the Court's electronic notice system upon all counsel of record as follows:

Dominique Day
Deborah Clark-Weintraub
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, NY  10036
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077
Email:  dday@wdklaw.com
dweintraub@wdklaw.com
*Counsel for Relators*

Barry A. Weprin
Jean Lee
Tamika Battle, Paralegal
Milberg Weiss LLP
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229
Email:  bweprin@milbergweiss.com
jlee@milbergweiss.com
tbattle@milbergweiss.com
*Counsel for Relators*

Ann Lugbill
Grant & Eisenhofer, P.A.
2406 Auburn Avenue
Cincinnati, OH  45219
Telephone:  (513) 784-1280
Facsimile:  (302) 622-7100
Email:  alugbill@gelaw.com
*Counsel for Relators*

W. Thomas Jacks
Fish & Richardson P.C.
111 Congress Avenue
Suite 810
Austin, TX  78701
Telephone:  (512) 472-5070
Facsimile:  (512) 320-8931
Email:  jacks@fr.com
*Counsel for Relators*

Katherine Martinez-Vitela
Martinez-Vitela Law Firm
24165 IH-10 West
Suite 217:224
San Antonio, TX  78257
Telephone:  (830) 981-5730
Facsimile:  (830) 981-5731
Email:  atty@gvtc.com
*Counsel for Relators*

Weston C. Loegering
Jones Day
2727 N. Harwood Street
Dallas, TX  75201
Telephone:  (214) 969-5264
Facsimile:  (214) 969-5100
Email:  wcloegering@jonesday.com
*Counsel for Defendant National Heritage
Insurance Company*

Brittan L. Buchanan
Van Osselaer, Cronin & Buchanan, LLP
9600 Great Hills Trail
Suite 300 West
Austin, TX  78759
Telephone:  (512) 225-2822
Facsimile:  (512) 225-2801
Email:  bbuchanan@vcblaw.com
*Counsel for Defendant National Heritage*
*Insurance Company*


John Alexander Huddleston
Strasburger & Price, LLP
300 Convent St. Suite 900
San Antonio, TX  78205-3715
Telephone:  (210) 250-6000
Facsimile:  (210) 250-6100
Email:  alex.huddleston@strasburger.com
*Counsel for Defendant Medicaid Claim*
*Solutions of Texas, Inc.*

Ricardo G. Cedillo
Les J. Strieber III
Davis, Cedillo & Mendoza, Inc.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX  78212
Telephone:  (210) 822-6666
Facsimile:  (210) 822-1151
Email:  rcedillo@lawdcm.com
lstrieber@lawdcm.com
*Counsel for Defendant National Heritage*
*Insurance Company*
Winstanley F. Luke
Assistant U.S. Attorney
601 NW Loop 410, Suite 600
San Antonio, TX  78216-5597
Telephone:  (210) 384-7315
Facsimile:  (210) 384-7322
E-mail:  stan.luke@usdoj.gov
*Counsel for United States Government*


and I hereby certify that, on March 6, I sent the document via U.S. Mail to the following:

Jullia Callahan
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 261
Washington, DC  20044
Telephone:  (202) 616-0291
E-mail:  jullia.callahan@usdoj.gov
Counsel for United States Government


  /s/ Robert C. Blume                  
Robert C. Blume, P.C.
**ATTORNEY FOR DEFENDANT DELOITTE**
**CONSULTING LLP**